IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL RUBIN,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>AVALARA, INC., EDWARD GILHULY, SCOTT MCFARLANE, TAMI RELLER, SRINIVAS TALLAPRAGADA, BRUCE CRAWFORD, MARCELA MARTIN, WILLIAM INGRAM, BRIAN SHARPLES, MARION FOOTE, RAJEEV SINGH, and KATHLEEN ZWICKERT,<br><br>　　　　　Defendants. | Case No.<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Michael Rubin ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.　Plaintiff brings this action against Avalara, Inc. ("Avalara" or the "Company") and the members of Avalara's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to be acquired by Vista Equity Partners Management, LLC ("Vista") through Vista's affiliates Lava Intermediate, Inc. ("Parent") and Lava Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On August 8, 2022, Avalara and Vista entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Avalara stockholders will receive $93.50 in cash for each share of Avalara common stock that they own.

3. On September 12, 2022, Avalara filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction. The failure to adequately disclose such material information renders the Proxy Statement false and misleading.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes

whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's stock trades on The New York Stock Exchange, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Avalara.

9. Defendant Avalara is a Washington corporation, with its principal executive offices located at 255 South King Street, Suite 1800, Seattle, Washington 98104. Avalara's common stock trades on The New York Stock Exchange under the ticker symbol "AVLR."

10. Defendant Edward Gilhuly is, and has been at all relevant times, a director of the Company.

11. Defendant Scott McFarlane is, and has been at all relevant times, Chief Executive Officer, Chairman, and a director of the Company.

12. Defendant Tami Reller is, and has been at all relevant times, a director of the Company.

13. Defendant Srinivas Tallapragada is, and has been at all relevant times, a director of the Company.

14. Defendant Bruce Crawford is, and has been at all relevant times, a director of the Company.

15. Defendant Marcela Martin is, and has been at all relevant times, a director of the Company.

16. Defendant William Ingram is, and has been at all relevant times, a director of the Company.

17. Defendant Brian Sharples is, and has been at all relevant times, a director of the Company.

18. Defendant Marion Foote is, and has been at all relevant times, a director of the Company.

19. Defendant Rajeev Singh is, and has been at all relevant times, Lead Independent Director and a director of the Company.

20. Defendant Kathleen Zwickert is, and has been at all relevant times, a director of the Company.

21. Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants," and together with Avalara, "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **Background of the Company**

22. Avalara provides cloud-based solutions for transaction tax compliance worldwide. The Company offers a suite of compliance solutions that enable businesses to address the complexity of transaction tax compliance; process transactions in real time; produce detailed records of transaction tax determinations; and reduce errors, audit exposure, and total transaction tax compliance costs. Company solutions include AvaTax, a solution for determining sales tax in

the United States; Avalara Compliance Cloud Returns for tax return preparation, filing, and remittance; which creates, validates, stores, and manages sales tax exemption.

### B. The Proposed Transaction

23. On August 8, 2022, Avalara issued a press release announcing the Proposed Transaction stating, in pertinent part:

> SEATTLE--(BUSINESS WIRE)-- Avalara, Inc. (NYSE: AVLR), a leading provider of tax compliance automation for businesses of all sizes, today announced it has entered into a definitive agreement to be acquired by Vista Equity Partners ("Vista"), a leading global investment firm focused exclusively on enterprise software, data, and technology-enabled businesses, in partnership with institutional co-investors.
>
> Under the terms of the agreement, Vista will acquire all outstanding shares of Avalara common stock for $93.50 per share in an all-cash transaction valued at $8.4 billion, inclusive of Avalara's net debt. The per share purchase price represents a premium of 27 percent over the Company's closing share price as of July 6, 2022, the last trading day prior to media reports regarding a potential transaction.
>
> Founded in 2004, Avalara's success is built up on an extensive partner network; large tax content data and repository to help customers stay up to date on dynamic tax rules and regulations; and its cloud-native, end-to-end multi-product tax compliance portfolio. In partnering with Vista, Avalara will look to build on its successful platform by refining its go-to-market strategy, expanding its international workforce, streamlining its systems architecture, and continuing to pursue value-accretive M&A opportunities.
>
> "For nearly two decades, Avalara has ambitiously pursued its vision to automate global compliance, making tax less taxing for businesses and governments around the world. As a leader in this category, we believe our continued investment in innovation and experience is exciting for our customers, partners, and employees. We are pleased to partner with Vista and will benefit from their expertise in enterprise software as we build and improve upon our cloud compliance platform," said Scott McFarlane, co-founder and CEO of Avalara.
>
> "Vista has built a reputation as a preferred partner for founder-led, next-generation software companies," said Monti Saroya, Co-Head of Vista's Flagship Fund and Senior Managing Director. "We look forward to working with Scott and the entire Avalara team to advance their vision and continue delivering innovative solutions to customers."
>
> "Avalara is a mission-critical platform serving customers in a variety of end-markets, including retail, manufacturing, hospitality, and software," said Adrian

Alonso, Managing Director at Vista. "Avalara's solutions, its commitment to product innovation, and its network of extensive partner integrations, resellers, and accountants make it a true leader in the space."

Transaction Details

The transaction, which was unanimously approved by the Avalara Board of Directors, is expected to close in the second half of 2022, subject to customary closing conditions, including approval by Avalara shareholders and receipt of regulatory approval. Closing of the transaction is not subject to a financing condition.

Upon completion of the transaction, Avalara's shares will no longer trade on the New York Stock Exchange, and Avalara will become a private company. The company will continue to operate under the Avalara name and brand.

Advisors

Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Avalara, and Simpson Thacher & Bartlett LLP and Perkins Coie LLP are acting as legal counsel.

Kirkland & Ellis LLP is acting as legal counsel for Vista.

## C. False and Misleading Statements and/or Material Omissions in the Proxy Statement

24. On September 12, 2022, Defendants filed the materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Avalara's stockholders. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information.

25. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

26. First, the Proxy Statement omits material information or provides materially misleading information regarding the Company's financial projections. Specifically, the Proxy Statement fails to disclose the line items underlying the Company's Unlevered Free Cash Flow.

27. Courts have routinely held management's financial projections are among the most important information a stockholder can have when evaluating the proposed consideration in a merger. See Brown v. Brewer, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) (denying defendants' motion for summary judgment on the issue of management's financial projections, the court held that "A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. [T]here is a substantial likelihood that a reasonable shareholder would consider it important in making his decision.") (brackets in original) (internal quotation marks omitted); In re Netsmart Techs., Inc., S'holders Litig., 924 A.2d 171, 203 (Del. Ch. 2007) (company's financial projections "are probably among the most highly-prized disclosures by investors"); In re Staples, Inc. S'holders Litig., 792 A.2d 934, 958 n.44 (Del. Ch. 2001) ("One suspects that the projections are the information that most stockholders would find the most useful to them."). See also SEC v. Nat'l Student Mktg. Corp., 457 F. Supp. 682, 707 (D.D.C. 1978) (quoting Republic Technology Fund, Inc. v. Lionel Corp., 483 F.2d 540, 547 (2d Cir. 1973)) ("In a merger transaction such as that presented here, accurate financial information is necessary in order for a shareholder fairly to be able to vote.").

28. Second, the Proxy Statement omits material information regarding the financial analyses performed by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman").

29. With respect to Goldman's Selected Public Company Comparables Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Goldman.

30. With respect to Goldman's Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 11.5% to 15.5%; (ii) Avalara's total debt and debt-like items as of June 30, 2022; (v) Avalara's unrestricted cash and cash equivalents as of June 30, 2022; and (vi) the number of fully diluted outstanding shares of Avalara's common stock.

31. With respect to Goldman's Illustrative Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) Avalara's total debt and debt-like items as of December 31 for each of the fiscal years 2022 to 2024; (ii) Avalara's unrestricted cash and cash equivalents as of December 31 for each of the fiscal years 2022 to 2024; (iii) the inputs and assumptions underlying the discount rate of 13.75%; and (iv) the number of fully diluted outstanding shares of Avalara's common stock for each of the fiscal years 2022 to 2024.

32. Third, The Proxy Statement fails to disclose material information relating to the background of the Proposed Transaction.

33. For example, the Proxy Statement fails to disclose whether the confidentiality agreements the Company entered into with parties during the sales process contain don't-ask-don't-waive ("DADW") standstill provisions that are still in effect and, if so, whether the DADW standstill provisions are precluding these parties from making a topping bid.

34. The omission of the above-referenced material information renders the following sections of the Proxy Statement false and misleading: "Financial Projections," "Opinion of Goldman Sachs & Co. LLC" and "Background of the Merger."

## COUNT I

### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

35. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

37. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act.  Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction.  The Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

39. By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

40. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

41. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth in full.

42. The Individual Defendants acted as controlling persons of Avalara within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Avalara, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Avalara's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Avalara stockholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 20, 2022            Respectfully submitted,

By  /s/ *Shallom Engel*
Shallom Engel
**Engel Law PLLC**
2329 Nostrand Avenue, Suite 100
Brooklyn, NY 11210
Telephone: (718) 880-8595
Email: shallom@engellawpllc.com

*Attorneys for Plaintiff*